NOT FOR PUBLICATION                    [Docket No. 17 & 19]

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |
|---|---|
| JEFFERY EMMETT,<br><br>            Plaintiff,<br><br>      v.<br><br>HOTEL EMPLOYEES AND RESTAURANT<br>EMPLOYEES INTERNATIONAL UNION<br>WELFARE-PENSION FUNDS, et al.,<br><br>            Defendants. | Civil No. 06-4205 (RMB)<br><br><br>**OPINION** |

APPEARANCES:

George C. Godfrey, III, Esq.
Mairone, Biel, Zlotnick & Feinberg
3201 Atlantic Avenue
Atlantic City, NJ 08401
        Attorneys for Plaintiff

Andrew Flaherty, Esq.
711 North Commons Drive
Aurora, IL 60598
        Attorneys for Defendant HEREIU Welfare Fund

Robert F. O'Brien, Esq.
Steven J. Bushinsky, Esq.
O'Brien Belland & Bushinsky, LLC
2111 New Road, Suite 101
Northfield, NJ 08225
        Attorneys for Defendant HEREIU Welfare Fund

Edward S. Wardell, Esq.
Kelley, Wardell, Craig, Annon & Baxter, LLP
41 Grove Street
Haddonfield, NJ 08033
        Attorneys for Defendant Horizon Healthcare Services

**BUMB**, United States District Judge:

1

**Introduction:**

This matter comes before the Court upon two motions: 1) a motion by Defendant Hotel Employees and Restaurant Employees International Union Welfare Fund (hereinafter the "Welfare Fund") for summary judgment and, 2) a motion to dismiss, or in the alternative for summary judgment, by Horizon Healthcare Services (hereinafter "Horizon").  At the heart of these motions is the refusal to cover spinal fusion surgery for Plaintiff, Jeffery Emmett (hereinafter "Plaintiff" or "Emmett") under the terms of the Welfare Plan at issue.  For the reasons discussed below, this Court will grant summary judgment in favor of both Defendants.

**Factual Background:**[1]

Plaintiff, Jeffery Emmett, originally filed a complaint in this matter in the Superior Court of New Jersey, Law Division Atlantic County.  The Welfare Fund removed this action to this Court on September 6, 2006.  Plaintiff filed a Second Amended Complaint on March 5, 2007, which names Horizon Healthcare Services and Hotel Employees and Restaurant Employees International Union Welfare-Pension Funds as Defendants.[2]

---

[1] The facts are drawn from the Parties' Rule 56.1 statements, which agree on the vast majority of facts stated herein.

[2] The Welfare Fund asserts, however, no such named entity exists. There exists a separate HEREIU Welfare Fund and a separate HEREIU Pension Fund. Each has a different enabling Trust

Emmett is a participant in the Welfare Fund and asserts that the Welfare Fund and Horizon incorrectly denied a pre-certification request for spinal surgery under the Welfare Fund's Plan of Benefits.

The Welfare Fund is a "Employee Benefit Plan" as defined under Section 3(2)(A) of ERISA 29 U.S.C. § 1002(2)(A) and established and maintained pursuant to Section 3(1), (2) and (3) of ERISA, 29 U.S.C. § 1002(1), (2) and (3), for the purpose of providing health benefits and other welfare benefits to eligible participants.  The Welfare Fund provides, inter alia, medical, hospital and surgical benefits to eligible participants and beneficiaries pursuant to a plan of benefits. The Welfare Fund has a mandatory health benefits program designated as Medical Management Review, requiring pre-certification for certain medical treatments and procedures. The Plan states in Article 7 – Utilization Review/Medical Management as follows:

ARTICLE 7
UTILIZATION REVIEW/MEDICAL
MANAGEMENT

---

document, different tax identification numbers, and different Plan document and Summary Plan Descriptions. The Welfare Fund states that Plaintiff's claim is clearly for the denial of a health and welfare benefit and not in any way associated with or touching upon a claim for pension fund benefits.  As Plaintiff has not specifically denied this statement, the Court deems it admitted for purposes of these motions.  See Hill v. Algor, 85 F. Supp. 2d 391, 408 n.26 (D.N.J. 2000) ("[u]nder L. Civ. R. 56.1, facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.").

Section 1. General

The Fund has entered into an agreement with an organization to provide Utilization Review services, a mandatory program which combines Hospital pre-admission certification and emergency admission review, pre-certification of all inpatient or outpatient treatment for mental and nervous disorders and alcohol/substance abuse, pre-certification of certain medical procedures and treatments, and medical case management.

The Plan provides medically necessary care and treatment consistent with the injury or sickness being treated, with the Trustees or Plan Administrator having the final decision as to what constitutes medically necessary care.   Article 2, Definitions, Section 30 of the Plan reads as follows:

Those procedures, treatments, services, supplies, and facilities where treatment is rendered, which are, whether rendered on an inpatient or outpatient basis:

(a)     necessary, appropriate, and effective for the injury or sickness being treated and consistent with the condition's recorded diagnosis;

(b)     broadly accepted by the organized medical community in the United States as being required in accordance with good medical practice and generally recognized professional standards; and

(c)     not generally regarded as experimental, investigational, or unproven by any government agency having appropriate jurisdiction, including but not limited to the Food and Drug Administration or the Office of Health Technology Assessment, the organized medical community in the United States, or

4

> in accordance with the standards and
> procedures utilized by the Plan to
> determine whether such treatments,
> procedures, services or supplies are
> experimental or investigational, the
> terms of which are adopted and
> incorporated herein.

> The final determination as to what constitutes medically
> necessary care and treatment under the Plan shall be made
> by the Trustees and/or Plan Administrator, unless
> otherwise specified in the Plan's Rules and Regulations
> or in the policies and procedures adopted by the Trustees
> from time to time, as they deem appropriate in carrying
> out the administration of the Plan.

Therefore, the Trustees and/or the Plan Administrator make the

final determination as to what constitutes medically necessary

care and treatment under the Plan.

To assist the Trustees in determining what is medically

necessary care and treatment, the Trustees rely upon a Medical

Management Review process.  Under the umbrella of Medical

Management Review, the Welfare Fund contracted with Horizon to

provide services applicable in the instant matter, including

pre-certification of certain medical procedures and treatments.

Emmett, as an eligible participant under the terms and

conditions of the Welfare Plan, and in accordance with these

utilization review/medical management procedures and

requirements, sought pre-authorization for a laminectomy and a

spinal fusion from Horizon Healthcare.  By correspondence dated

March 15, 2006, Horizon advised Plaintiff that the laminectomy

was approved but denied the spinal fusion procedure as not

medically necessary, and provided Plaintiff with information for
an administrative appeal of this decision.

On March 17, 2006, Horizon received a first level appeal
from Plaintiff.  On March 21, 2006, Horizon notified Plaintiff in
writing that the appeal for coverage for a spinal fusion was
denied and stated:

> There is no recent or current medical information
> submitted for review. The last office note is a year ago,
> (04/14/2005) with paucity of objective information. On
> 06/12/2003 the MRI of the lumbar does not describe
> clinically significant findings. The basis for back
> surgery is not validated based on the medical information
> provided. Additionally, the patient has a history of
> jitney accident from 04/25/2003 and the issue of surgery
> should be weighed very carefully. Records reflect
> palliative care by chiropractor, but there is no
> indication that aggressive physical therapy or home
> exercise program has been done. Also, there is an obesity
> issue not addressed in the various office notes.
> Therefore, medical necessity is not established at this
> time.

This correspondence also provided Plaintiff with information
regarding an additional level of appeal and told him to contact
the Welfare Fund in that regard.

On April 19, 2006, the Welfare Fund received a second level
appeal from Plaintiff, and, in accordance with the terms and
conditions of the Plan, referred the claim and medical records to
the Welfare Fund's Independent Medical Consultant, Health
Strategies, Inc. ("HSI") for review.  The physician from HSI,
Board Certified in Orthopedic Surgery, reviewed all available
medical records and concluded that surgical intervention would

6

not improve Plaintiff's level of pain.  The report states in

pertinent part:

> Decision: Overall I cannot recommend approval for the
> surgery suggested in this case.
>
> The opinions in this report are within a reasonable
> degree of medical probability and based on my experience
> as a Board Certified Orthopedic Surgeon and Independent
> Medical Examiner and my review of the medical records as
> submitted in this case.

The Fund requires that the Trustees deny a claim that is not

deemed medically recommended and defines General Exclusions and

Limitations in Article 17 as follows:

> Section 5.
> Treatment, services, or supplies not recommended or
> approved by the attending Physician, or not Medically
> Necessary in treating the injury or sickness. . . .[3]

---

[3] The Fund grants the administrator discretionary authority
to construe the Fund's Rules and Regulations and to determine
eligibility for benefits. Fund Article 25, Section 4 states:

> Section 4.          Interpretation and Authority
>
> The Trustees have the right to decide all questions or
> controversies of whatever character, arising in any
> manner between any parties or persons in connection with
> the Fund and the Plan or the interpretation thereof,
> including the construction of the language of these Rules
> and Regulations, the Summary Plan Description, the Trust
> Agreement and any writing, decision, benefit or
> Eligibility determination, instrument, or accounts in
> connection with same and with the operation of the Fund
> or otherwise, which shall be binding upon all persons
> dealing with the Fund or claiming any benefits
> thereunder, except to the extent that the Trustees may
> subsequently determine, in their sole discretion, that
> their original decision was in error or to the extent
> such decision may be determined to be arbitrary or

The Trustees relied upon the conclusions of the independent medical examiner, HSI.  The HSI doctor produced a report dated April 26, 2006, providing a summary of all the records reviewed in reaching the decision to deny the pre-certification for the lumbar fusion. That record reveals that the patient had prior lumbar spine surgery and that the doctor reviewed an MRI of the lumbar spine and no fewer than fourteen (14) physical examination reports of treating physicians.

The Fund and its Trustees relied upon the opinion of the HSI physician, and denied Plaintiff's request for pre-certification. By correspondence dated May 4, 2006, the Welfare Fund advised Emmett that his appeal had been denied and set forth the reasons for the denial, citing to the applicable Plan provisions and advising plaintiff of his appeal rights under Section 502(a) of ERISA.  In response, Plaintiff filed this instant lawsuit alleging that both Horizon and the Welfare Fund "failed to provide reasonable and necessary medical treatment" and that such failure was "arbitrary and capricious."  Pl.'s Second Amend.

capricious by a court or arbitrator having jurisdiction over such matters.

The Trustees have the authority to increase, decrease, change or terminate benefits, Eligibility rules, or other provisions of the Plan of Benefits as they may find it necessary for the sound and efficient administration of the Fund, provided that the changes are not inconsistent with the law or with the provisions of the Trust Agreement.

Compl. ¶ 4-6.

**Standards of Review:**

<u>1.</u>   <u>The Welfare Fund's Motion for Summary Judgment</u>

Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Hersh v. Allen Products Co.</u>, 789 F.2d 230, 232 (3d Cir. 1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  <u>See</u> <u>id.</u>  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. <u>See</u> <u>id.</u>  "In making this determination, a court must make all reasonable inferences in favor of the non-movant." <u>Oscar Mayer Corp. v. Mincing Trading Corp.</u>, 744 F. Supp. 79, 81 (D.N.J. 1990) (<u>citing</u> <u>Meyer v. Riegel Prods. Corp.</u>, 720 F.2d 303, 307 n.2 (3d Cir. 1983)). "At the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249.

2.    Horizon's Motion to Dismiss

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied if the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true, (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)(internal citations omitted).  Moreover, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965 (internal citations omitted).

A district court must accept any and all reasonable inferences derived from those facts. Unger v. Nat'l Residents Matching Program, 928 F.2d 1392 (3d Cir. 1991); Glenside West Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1100, 1107 (D.N.J. 1991); Gutman v. Howard Sav. Bank, 748 F. Supp. 254, 260 (D.N.J. 1990).  Further, the court must view all allegations in the complaint in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20

F.3d 1250, 1261 (3d Cir. 1994).[4]


**Discussion:**

1.   The Welfare Fund

    The Welfare Fund has moved for summary judgment stating that
there is no issue of fact as to whether it properly denied
Emmett's request for benefits (pre-certification for spinal
fusion).  As an initial matter, the Welfare Fund argues that an
abuse of discretion standard applies in reviewing its
determination.  This Court agrees - pursuant to the terms of the
Plan, the Trustees had discretionary authority to interpret the
terms of the Plan.  Fund Article 25, Section 4, states, inter
alia, that "[t]he Trustees have the right to decide all questions
or controversies. . . in connection with the Fund and the Plan or
the interpretation thereof, including . . . benefit or
Eligibility determination. . . ." Bushinsky Dec., Ex. K.  Where
such discretion is granted, a court reviews the administrative
determination under an arbitrary and capricious standard.
Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).
Plaintiff does not dispute that the arbitrary and capricious
standard of review applies to the instant dispute.  In fact,
Plaintiff's brief states that "[t]he issue is [] whether or not

---

    [4] Horizon has moved for summary judgment in the alternative,
in which case the appropriate summary judgment standard, set
forth above, applies.

the reliance was arbitrary or capricious." Pl.'s Br. at 9.

Under the arbitrary and capricious standard, a court may overturn a decision of a plan administrator "only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." McLeod v. Hartford Life and Acc. Ins. Co. 372 F.3d 618, 623 (3d Cir. 2004). "This scope of review is narrow, and the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." Abnathya v. Hoffman-LaRoche, Inc., 2 F.3d 40, 44-45 (3d Cir. 1993) (internal quotations and citation omitted).

In applying the arbitrary or capricious standard to the instant facts, Plaintiff avers that the Defendants abused their discretion in determining that Plaintiff was ineligible for the requested medical treatment. More specifically, Plaintiff states that it was an abuse of discretion by Defendants to rely on the recommendation of their independent medical examiner and to "totally disregard[] the treating physicians [sic] analyses and opinion as to the requested surgery." Pl.'s Br. at 8.

In support of this argument, Plaintiff annexes three letters to his opposition. The first is an April 11, 2000, letter by Dr. Donald Myers, which states, in part, that "[l]umbar fusion is also a viable option." Pl.'s Ex. A. The second exhibit is a November 18, 2003, letter by Dr. Epstein, Plaintiff's treating physician, which opines that Plaintiff's options include lumbar

12

fusion. Pl.'s Ex. B.  Finally, another letter by Dr. Epstein,

dated June 30, 2006, says, in relevant part,

> it is my professional opinion based upon a reasonable
> degree of medical probability and certainty, taking into
> account the patient's medical history, his recent trauma,
> failure to improve with conservative care, diagnostic
> studies. . .all of which are concordant with his pain and
> the need for a two level posterior lumbar interbody
> arthrodesis, decompression, pedicle screw placement,
> posterolateral fusion in order to help improve his
> overall symptomatology and get him back on the road to
> recovery.
>
>          ***
>
> He is <u>not</u> a candidate for surgical decompression without
> <u>fusion</u>.

Pl.'s Ex. C.

Notably, Plaintiff cites no case law in support of his

conclusory statement that failure to abide by the recommendations

of Dr. Epstein renders the decision to deny spinal fusion as

arbitrary and capricious.  In response, the Welfare Fund argues

that the June 30, 2006, letter is outside the scope of

administrative review and thus, should not be considered.

It is well established that a Court's review of the decision

of plan administrator must be limited to the record available to

the administrator at the time the decision was made.  <u>See

Mitchell v. Eastman Kodak Co.</u>, 113 F. 3d 433, 440 (3d Cir. 1997)

(holding that the reviewing court must look at the evidence that

was before the administrator).  "Because the purpose of arbitrary

and capricious review is to determine the reasonableness of the

13

determination at the time it was made, the reviewing court may only consider evidence that was contained in the record at that time." Carney v. IBEW Local Union 98 Pension Fund, 66 Fed. Appx. 381, 385 (3d Cir. 2003) (citing Mitchell, 113 F.3d at 440).  The Defendants had completed the review of this claim prior to Dr. Epstein's June 30, 2006, letter.  In fact, Plaintiff received a letter dated May 4, 2006, informing him that this appeal had been denied.  Therefore, this letter is outside the scope of this Court's review as it was not in front of the administrator at the time the decision was rendered.

Moreover, even if this exhibit was properly within the scope of the administrative record, Plaintiff annexes this exhibit, along with the others, to his brief in opposition, but fails to submit an attorney declaration in support thereof.  On a motion for summary judgment, the Court "cannot consider any exhibits attached to either briefs or statements of material facts because such exhibits are not part of the evidentiary record."  Miller v. McMann, 89 F. Supp. 2d 564, 569 n.5 (D.N.J. 2000).  Thus, the letters are not properly submitted by Plaintiff for consideration by this Court.

Finally, even assuming that all of Plaintiff's exhibits were properly submitted and part of the administrative record, Plaintiff has failed to set forth sufficient evidence to create a genuine issue of material fact as to whether the denial of

precertification was arbitrary and capricious. Pursuant to
Plaintiff's first appeal, Horizon informed Plaintiff that his
request had been denied because there was a "paucity of objective
information" supporting the request, and because "the MRI of the
lumbar does not describe clinically significant findings."
Bushinsky Decl. Ex. F.  When Plaintiff pursued a second level of
appeal, the Welfare Fund, according to the terms of the Plan
referred the claim to Health Strategies, Inc., ("HSI") for
review.  The independent medical review was undertaken by Dr.
Mary Ann Shannon, who is Board Certified in Orthopedic Surgery.
Dr. Shannon, addressing Dr. Epstein's recommendation, reviewing
all available medical records, and consulting specific references
in support of her conclusions, found that Plaintiff "does not
fall into a category that would expect improvement with surgery.
. . [and] I cannot recommend approval of the surgery suggested in
this case." Bushinsky Decl. Ex. G.  Because the reviewing
physician did not recommend the spinal fusion, the Plan required
that the Trustees deny the claim.

Plaintiff does not dispute that the Welfare Fund utilized
the appropriate avenues of review prescribed by the Plan i.e.,
the benefits request was subject to multiple levels of appeal and
the second level was performed by HSI, in accordance with the
Plan document.  See Stratton v. E.I. DuPont de Nemours, 363 F.3d
250, 256 (3d Cir. 2004) ("a plan administrator's decision will be

overturned only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan.") (internal citations and quotations omitted).  In essence, this matter presents a difference of opinion between Plaintiff's treating physician, Dr. Epstein, and Dr. Shannon, HSI's reviewing physician.  Plaintiff avers that the decision to ignore Dr. Epstein's recommendation was arbitrary and capricious.

Again, under the arbitrary and capricious standard of review this Court may only overturn the administrator's "only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993) (quoting Adamo v. Anchor Hocking Corp., 720 F. Supp. 491, 500 (W.D. Pa. 1989)).  The fact that the advice of Plaintiff's treating physician was not followed does not, itself, render the denial of benefits arbitrary and capricious.  See Black & Decker v. Nord, 538 U.S. 822, 831 (2003) ("nothing in [ERISA] suggests that plan administrators must accord special deference to the opinions of treating physicians.  Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion.").  Plaintiff summarily states that the decision to deny benefits was "not based upon accepted medical practices and totally disregarded the treating physician[']s analysis."  However, Plaintiff has set

16

forth no evidence undermining the opinion of Dr. Shannon and it is clear from Dr. Shannon's report that she did consider Dr. Epstein's recommendation.  <u>See</u> Bushinsky Decl. Ex. G (Dr. Shannon cites Epstein's discussions of fusion with Plaintiff).  Instead, Plaintiff rests on the fact that Dr. Epstein came to a different conclusion and avers that this is sufficient to deny summary judgment.

The law is well established that a difference of professional opinion is not sufficient to render a decision arbitrary and capricious.  <u>See</u> <u>Stratton v. E.I. Dupont de Nemours</u>, 363 F.3d 250 (3d Cir. 2004) (finding that professional disagreement between Plaintiff's physician and insurer's physicians was not sufficient to defeat summary judgment).  Moreover, as discussed briefly above, Plan administrators are under no duty to defer to a treating physicians opinion.  <u>See</u> <u>Black & Decker v. Nord</u>, 538 U.S. at 831.  Because this Court is not free to "substitute its own judgment for that of the defendants in determining eligibility for plan benefits," <u>Abnathya</u>, 2 F.3d at 45, and because Plaintiff is attempting to overcome summary judgment with a difference of professional opinion, this Court holds that Plaintiff has failed to demonstrate that there is a genuine issue of material fact as to whether the decision to deny the benefits was arbitrary and capricious.  Therefore, summary judgment will be granted.

17

2.   Horizon Healthcare

Horizon Healthcare, relying on the statement of facts and arguments submitted by the Welfare Fund, argues that, in addition to the reasons set forth by the Welfare Fund, that Plaintiff's claims must be dismissed pursuant to Briglia v. Horizon Healthcare Services, 2005 U.S. Dist. LEXIS 18708 (D.N.J. May 13, 2005).  This argument appears to rely on the portions of the Briglia decision that discuss whether a plaintiff may properly bring suit against a third party plan administrator under ERISA Section 502(a)(1)(B) where the third party administrator is not a fiduciary.[5]  Notably, Plaintiff's brief in response does not address Horizon's argument that it is not a proper party to this case.  However, the Court need not address this argument because, even if Horizon is a proper party, it is entitled to summary judgment for the reasons discussed above as the decision to deny the Plaintiff's precertification request was neither arbitrary or capricious.


**Conclusion:**

For the aforementioned reasons, this Court holds that the decision to deny Plaintiff's request for benefits was neither arbitrary or capricious.  As such, the claims asserted against

---

[5] Horizon fails to expound this argument, instead it simply makes a reference to the Brigila case and states that it is not a proper party.

the Welfare Fund and Horizon will be dismissed.

    An appropriate Order will issue this date.


Dated: <u>October 25, 2007</u>        **s/Renée Marie Bumb**
                              RENÉE MARIE BUMB
                              UNITED STATES DISTRICT JUDGE